UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| JOEL CARTER,<br>　　　Plaintiff,<br>v.<br><br>UNKNOWN MANDY AND<br>UNKNOWN FREEMAN,<br>　　　Defendants.<br>_____/ | Case No. 21-11568<br><br>Mark A. Goldsmith<br>United States District Judge<br><br>Curtis Ivy, Jr.<br>United States Magistrate Judge |

### REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF No. 31)

#### I.　　PROCEDURAL HISTORY

Plaintiff Joel Carter filed this prisoner civil rights suit on June 24, 2021, without the assistance of counsel, alleging violations of the First Amendment to the United States Constitution and malicious prosecution under Michigan law. (ECF No. 1). It was referred to the undersigned for all pretrial matters. (ECF No. 11). Throughout this lawsuit Plaintiff has been incarcerated within the Michigan Department of Corrections ("MDOC") at Macomb Correctional Facility ("MRF"). (ECF No. 1). Plaintiff alleges that Defendant Sebastian Freeman and Defendant Darnell Mandy gave him a misconduct ticket in retaliation for filing a grievance. (ECF No. 1, PageID.5). The motion for summary judgment is fully briefed (ECF Nos. 31, 34, 36) and ready for report and recommendation. For the reasons

1

discussed below, the undersigned recommends that Defendants' motion for summary judgment be granted.

II.     **FACTUAL BACKGROUND**

The subject events began on December 13, 2017. (ECF No. 1). Plaintiff alleges in his verified complaint that on December 13, 2017, Defendant Freeman "arbitrarily confiscated Plaintiff's legal footlocker after he removed legal documents from the locker, and replaced the documents with contraband, for the sole purpose to confiscate Plaintiff's property." (*Id.* at PageID.3). In their motion for summary judgment, Defendants indicate that on December 13, 2017, Plaintiff received a misconduct ticket for possessing 19 bottles of alcohol, in the form of juice smelling of fermented fruit. (ECF No. 31-2, PageID.255). Defendants provide the MDOC records from Plaintiff's misconduct hearing, which reflect Plaintiff was found guilty of possessing alcohol that day. (*Id.*). Plaintiff's hearing on the alcohol possession ticket was held on December 19, 2017. (*Id.*).

During the time between when Plaintiff received the ticket and his hearing regarding it, Plaintiff filed a grievance against Defendant Freeman for confiscating the contents of his footlocker. (ECF No. 1, PageID.3). Plaintiff indicates he filed

2

the grievance on December 19, 2017, and the grievance was "resolved in his favor" and his property returned. (*Id.*).[1]

On February 25, 2018, Plaintiff received a misconduct ticket for fighting with non-party Douglas Austin. (ECF No. 31, PageID.229). Defendants indicate that both Plaintiff and Austin received misconduct tickets related to the altercation. (*Id.*). Plaintiff alleges that this misconduct ticket was fabricated in retaliation for the December 19, 2017, grievance filed against Defendant Freeman. (ECF No. 1, PageID.5). Plaintiff characterizes the altercation on February 25, 2018, as an assault. (*Id.* at PageID.3). Plaintiff alleges after the altercation Defendant Freeman said he "should put Plaintiff in segregation." (*Id.*). Plaintiff asked why and alleges that Defendant Freeman responded "fighting" and when Plaintiff denied fighting Defendant Freeman stated, "I can do anything I want, all I have to do is say you were fighting." (*Id.* at PageID.3-4). When Plaintiff asked Defendant Freeman why he would do something like that, Plaintiff indicates Freeman replied, "why would you file bogus grievances?" (*Id.* at PageID.4).

As to Defendant Mandy, Defendants indicate Mandy did not have any personal involvement with the misconduct ticket. (ECF No. 31, PageID.229).

---

[1] In the grievance records Plaintiff provides, the Step I response indicates "[t]he [g]reivant had his footlocker returned to him on an earlier date. The [g]rievant admitted the officers did not move his legal work." (ECF No. 35, PageID.377). The Step I rejection was upheld at Step II and Step III. (*Id.* at PageID.378-79).

Defendants indicate Mandy reviewed the misconduct ticket after it was written and relayed his observations to the hearing officer. (*Id.*). Plaintiff alleges that Defendant Mandy "asked Plaintiff to make a written statement against the prisoner who assaulted him." (ECF No. 1, PageID.4). Plaintiff claims Mandy tried to pressure or coerce Plaintiff by allowing Plaintiff to either choose to make a statement to support the other prisoner's assault charge or that Plaintiff would be given an assault charge himself. (*Id.*). Plaintiff declined to "snitch" and alleges Defendant Mandy placed him in segregation. (*Id.*). Defendants provide that a misconduct ticket for fighting is a non-bondable offense that requires classification to segregation pending a hearing on the misconduct pursuant to MDOC policy. (ECF No. 31, PageID.230) (citing MDOC Policy Directive 03.03.105).

Plaintiff alleges that when Defendant Mandy reviewed the misconduct ticket Mandy "wrote a false statement that Plaintiff was fighting in an attempt to bolster Freeman's false fighting charge." (ECF No. 35, PageID.369). Plaintiff alleges the fighting misconduct ticket was later dismissed following a misconduct hearing. (*Id.*).

### III.   ANALYSIS AND RECOMMENDATIONS

#### a.   Standard of Review

Summary judgment is mandated "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the

4

existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A motion for summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When evaluating a motion for summary judgment, the Court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004).

"The moving party has the initial burden of proving that no genuine issue of material fact exists. . . ." *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); *cf.* Fed. R. Civ. P. 56(e)(2) (providing if a party "fails to properly address another party's assertion of fact," then the court may "consider the fact undisputed for purposes of the motion"). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). The nonmoving party must "make an affirmative showing with proper evidence in order to defeat the motion."

5

*Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009); *see also Lee v. Metro. Gov't of Nashville & Davidson Cty.*, 432 F. App'x 435, 441 (6th Cir. 2011) ("The nonmovant must, however, do more than simply show that there is some metaphysical doubt as to the material facts, there must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute.") (internal quotation marks and citation omitted). In other words, summary judgment is appropriate when "a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case. . . ." *Stansberry*, 651 F.3d at 486 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

That Plaintiff is *pro se* does not reduce his obligations under Rule 56. Rather, "liberal treatment of *pro se* pleadings does not require lenient treatment of substantive law." *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006). In addition, "[o]nce a case has progressed to the summary judgment stage, . . . 'the liberal pleading standards under *Swierkiewicz* [*v. Sorema, N.A.*, 534 U.S. 506, 512-13 (2002)] and [the Federal Rules] are inapplicable.'" *Tucker v. Union of Needletrades, Indus. & Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005) (quoting *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004)). The Sixth Circuit has made clear that, when opposing summary judgment, a party cannot rely on allegations or denials in unsworn filings and that a party's

6

"status as a *pro se* litigant does not alter [this] duty on a summary judgment motion." *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010); *see also United States v. Brown*, 7 F. App'x 353, 354 (6th Cir. 2001) (affirming grant of summary judgment against a *pro se* plaintiff because he "failed to present any evidence to defeat the government's motion").

      b. <u>Discussion</u>

To establish a claim of First Amendment retaliation, a plaintiff must show (1) he engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two; in other words, the adverse action was motivated at least in part by the plaintiff's protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). "Under the third element, 'the subjective motivation of the defendants is at issue.'" *Maben v. Thelen*, 887 F.3d 252, 262 (6th Cir. 2018) (quoting *Thaddeus-X*, 175 F.3d at 399). "The analysis of motive in retaliation claims is well-developed— once the plaintiff has met his burden of establishing that his protected conduct was a motivating factor behind any harm, the burden of production shifts to the defendant." *Maben v. Thelen*, 887 F.3d 252, 262 (6th Cir. 2018) (cleaned up) (quoting *Thaddeus–X*, 175 F.3d at 394). Once the burden shifts to the defendant, "'[i]f the defendant can show that he would have taken the same action in the

7

absence of the protected activity, he is entitled to prevail on summary judgment.'" *Id.* at 267 (quoting *Thaddeus-X*, 175 F.3d at 399).

### i. *Defendant Mandy*

As to Defendant Mandy, Defendants argue Plaintiff has not demonstrated sufficient personal involvement by Mandy to sustain a First Amendment retaliation claim. (ECF No. 31, PageID.233). Defendants argue that Mandy was unaware of any grievances filed by Plaintiff and that Plaintiff does not allege in his complaint that Mandy was aware of a grievance to retaliate against. (*Id.* at PageID.237).

To assert a retaliation claim against any specific defendant, a plaintiff must plead facts of personal involvement. *Robertson v. Lucas*, 753 F.3d 605, 615 (6th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 676) (explaining that "[a] critical aspect of the § 1983 . . . universe is that to be held liable, a plaintiff must demonstrate 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'"); *Binay v. Betterdorf*, 601 F.3d 640, 650 (6th Cir. 2010). A plaintiff must offer facts which support a reasonable inference that a defendant acted "in response" to protected speech. *Boxill v. O'Grady*, 935 F.3d 510, 518 (6th Cir. 2019). A "defendant must have known about the protected activity in order for it to have motivated the adverse action." *Hamilton v. Starcom Mediavest, Inc.*, 522 F.3d 623, 628 (6th Cir. 2008) (quoting *Thaddeus-X*, 175 F.3d at 387 n.3).

Plaintiff's allegation of retaliation against Defendant Mandy is that Defendant Mandy "attempted to bolster Defendant Freeman's false fighting charge." (ECF No. 1, PageID.4). Plaintiff does not allege that Defendant Mandy was even aware of the December 19, 2017, grievance that he alleges Defendants were retaliating against Plaintiff for writing. Defendant Mandy could not retaliate "in response" to a ticket Plaintiff does not argue Mandy was aware of. Simply put, Plaintiff fails to state or bring forth any facts which support that Defendant Mandy was acting with retaliatory motive. Indeed, Plaintiff acknowledges "that Plaintiff cannot show that [Defendant Mandy] was personally involved in issuing the misconduct ticket, and cannot show Mandy was aware of any grievance against Freeman." (ECF No. 35, PageID.374).

In response, Plaintiff argues Defendant Mandy is liable under the cat's paw theory of liability. "[T]he term 'cat's-paw' refers to 'one used by another to accomplish his purposes.'" *Seals v. Wayne Cnty.*, No. 20-11272, 2022 WL 16855784, at *7 (E.D. Mich. Nov. 10, 2022). In the Sixth Circuit, the cat's paw theory of liability is applied in various contexts. *See, e.g., Staub*, 562 U.S. at 419, 131 S.Ct. 1186 (applying the cat's paw theory to a Uniformed Services Employment and Reemployment Rights Act claim); *DeNoma v. Hamilton Cty. Ct. of Common Pleas*, 626 F. App'x 101, 110 (6th Cir. 2015) (applying the cat's paw theory to a § 1983 gender discrimination claim); *Chattman v. Toho Tenax Am.,*

9

*Inc.*, 686 F.3d 339, 350–51 (6th Cir. 2012) (applying the cat's paw theory to a Title VII race discrimination claim); *Shager v. Upjohn Co.*, 913 F.2d 398, 405–06 (7th Cir. 1990) (applying the cat's paw theory to an Age Discrimination in Employment Act claim). That said, the Court has found no case in the Sixth Circuit applying cat's paw liability where the sole claim is a First Amendment retaliation claim and this Court shall not extend the doctrine.

The undersigned suggests that Plaintiff has failed to allege personal involvement by Defendant Mandy, therefore, Defendant Mandy is entitled to judgment as a matter of law.

### ii. *Defendant Freeman*

Defendants argue Plaintiff's claim fails as to Defendant Freeman because Plaintiff cannot establish causation between the grievance Plaintiff wrote against Defendant Freeman and the misconduct ticket for fighting. (ECF No. 31, PageID.231). Defendants point to the physical altercation Plaintiff was involved in and argue they would have taken the same action in the absence of any protected activity.[2] (*Id.* at PageID.244).

In response, Plaintiff argues he "has presented evidence establishing several facts that would allow a jury to find Freeman and Mandy, [were] motivated at least

---

[2] Defendants appear to concede that Plaintiff engaged in protected conduct and adverse action was taken against him because they contest neither element in their motion.

in part by Plaintiff's protected conduct. One could reasonably infer that Freeman and Mandy's actions or omissions, (especially their statements) that both Defendants had a retaliatory motive." (ECF No. 35, PageID.372-73). Plaintiff argues Defendants failed to follow MDOC procedure and this is evidence of retaliatory motive. (*Id.*). As to the physical altercation, Plaintiff argues Defendants have presented no evidence of the fight and that the video footage of the events is corrupted. (*Id.* at PageID.373). Plaintiff asserts that because Defendants have not produced the video evidence, they should not be allowed to dispute whether a fight occurred. (*Id.*).[3] Plaintiff also concedes "a reasonable juror might determine that Defendants would have issued the misconduct ticket regardless of the grievance, but a reasonable juror might instead determine that the mistaken belief was pretext for Freeman's and Mandy's true motivation: retaliation." (*Id.* at PageID.375).

Plaintiff has provided factual details bearing on whether Defendant Freeman's action could have been motivated at least in part by Plaintiff's grievance. Plaintiff submitted a grievance against Freeman and a few months later Freeman issued the fighting misconduct ticket in response to the grievance, but he

---

[3] The Court concurrently issued an Order addressing Plaintiff's motion for spoliation sanctions regarding the corrupted video evidence of the physical altercation. The Court notes that whether the physical altercation occurred in Plaintiff's cell, the subject of dispute in the motion for sanctions, does not impact the analysis here. No matter where the physical altercation took place, both parties seem to agree physical contact took place and the location is irrelevant to whether a misconduct ticket is appropriate.

11

asserts he was not fighting. Plaintiff states that Freeman said "why would you file bogus grievances?" related to submitted grievances. (ECF No. 1). Freeman denies asking this question, so this is a question of fact. The time between the protected activity and the adverse action (temporal proximity) alone is insufficient to draw an inference of causation. *Tuttle v. Metro. Gov't of Nashville*, 474 F.3d 307, 321 (6th Cir. 2007). But that timing coupled with the question of fact as to whether Freeman later asked Plaintiff about filing grievances could lead a jury to conclude that Freeman's misconduct ticket was written in part because of Plaintiff's grievance, but this is a not a strong case in Plaintiff's favor.

At any rate, Defendants have presented evidence of a valid, nonretaliatory basis for issuing the misconduct ticket which should entitle them to summary judgment. The parties are in agreement that a physical altercation of some sort took place. Defendants call the incident a fight and point to the misconduct ticket which was issued for "fighting[.]" (ECF No. 31, PageID.245). They assert Plaintiff "had a bloody mouth" following the interaction. (*Id.* at PageID.241). Freeman states that he observed Plaintiff and Austin in a physical altercation where punches were thrown. (ECF No. 31-5, PageID.267, at ¶ 5). He says that MDOC policy requires that he write a Class I misconduct ticket if he observes behavior that constitutes "fighting." (*Id.* at ¶ 7). In his response Plaintiff concedes he was discovered with a bloody lip. (ECF No. 35, PageID.368). In his complaint,

Plaintiff characterizes the physical altercation as an assault. (ECF No. 1, PageID.3). During the hearing on the fighting misconduct ticket, Plaintiff stated he and Austin were playing around. (ECF No. 31-8, PageID.313). The Court need not determine which name is most appropriate; the parties have sufficiently established that a dispute resulting in bodily harm occurred.[4]

There is no dispute that there was a physical altercation between Plaintiff and Austin, for which both were issued misconduct tickets. And there is no dispute that MDOC policy requires a misconduct ticket be written if a corrections officer observes fighting. On these facts, a reasonable jury could only conclude that Freeman wrote the ticket because he observed Plaintiff engage in behavior that constitutes fighting, whether or not Plaintiff wrote a grievance against Freeman. That facts could later surface on the parties' roles during the altercation does not change the facts known to Freeman at the time he discovered Plaintiff and Austin in the physical altercation. Any reasonable jury would conclude that the Defendants would have issued some sort of misconduct ticket for the physical altercation regardless of Plaintiff's grievance. *Maben*, 887 F.3d at 262 (6th Cir. 2018) ("'If the defendant can show that he would have taken the same action in the

---

[4] As far as Plaintiff may be arguing no physical altercation occurred, that is contradicted by the record and the Court will not adopt this interpretation. *Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

absence of the protected activity, he is entitled to prevail on summary judgment.'") (quoting *Thaddeus-X*, 175 F.3d at 399). Both parties to the physical altercation received misconduct tickets which is persuasive evidence of a non-retaliatory motive. (ECF No. 31, PageID.229). The undersigned suggests that because Defendants would have issued a misconduct ticket in the absence of the protected activity, they are entitled to prevail on summary judgment.

### iii. State Law Claims

Plaintiff has also raised a claim of malicious prosecution under Michigan state law. (ECF No. 1). If the recommendations above to grant summary judgment as to all Defendants is adopted, the undersigned suggests the Court should not exert supplemental jurisdiction over the state-law claims. Under 28 U.S.C. § 1367, a district judge may decline to exercise supplemental jurisdiction over state-law claims if "the district court has dismissed all claims over which it has original jurisdiction. . . ." 28 U.S.C. § 1367(c)(3). "When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims [.]" *Musson Theatrical, Inc. v. Express Corp.*, 89 F.3d 1244, 1254–55 (6th Cir. 1996). Indeed, the Sixth Circuit has repeatedly advised that the district courts should not exercise supplemental jurisdiction over state-law claims where all original jurisdiction claims have been dismissed. *See*, *e.g.*, *Brown v. Cassens Transp. Co.*, 546 F.3d 347, 363 (6th Cir.

14

2008). The undersigned recommends Plaintiff's malicious prosecution claim be dismissed without prejudice.

## IV. RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that Defendants' motion for summary judgment (ECF No. 31) be **GRANTED** and that the First Amendment retaliation claim be **DISMISSED** and the state law malicious prosecution claim be **DISMISSED WITHOUT PREJUDICE**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Loc. 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2), Local Rule 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: March 13, 2023

s/Curtis Ivy, Jr.
Curtis Ivy, Jr.
United States Magistrate Judge

**CERTIFICATE OF SERVICE**

The undersigned certifies that this document was served on counsel of record and any unrepresented parties via the Court's ECF System or by First Class U.S. mail on March 13, 2023.

s/Kristen MacKay
Case Manager
(810) 341-7850