UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOEL CARTER,

        Plaintiff,                        Case No. 21-cv-11568

v.                                             HON. MARK A. GOLDSMITH

DARNELL MANDY et al.,

        Defendants.
_____/

**OPINION & ORDER
(1) GRANTING PLAINTIFF'S MOTION FOR RECONSIDERATION (Dkt. 44); (2) VACATING THE COURT'S PRIOR RULING (Dkt. 39); (3) ACCEPTING IN PART AND REJECTING IN PART THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION (R&R) (Dkt. 38); (4) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Dkt. 31)**

The matter before the Court is Plaintiff Joel Carter's motion for reconsideration[1] (Dkt. 44) of the Court's opinion and order (i) accepting the recommendation contained in the magistrate judge's report and recommendation (R&R) dated March 13, 2023 (Dkt. 38), (ii) granting Defendants' motion for summary judgment as to the federal claim against them (Dkt. 31), and (iii) dismissing without prejudice Carter's state-law claim. See 4/4/2023 Op. & Order (Dkt. 39).[2]

---

[1] The Court construes Carter's motion, labeled as a motion for reconsideration under LR 7.1, as a motion to amend a judgment under Federal Rule of Civil Procedure 59(e) or for relief from judgment under Rule 60. Carter filed a notice of appeal of the Court's judgment on May 16, 2023 (Dkt. 46). However, under Federal Rules of Appellate Procedure 4(a)(4)(A) and 4(a)(4)(B)(i), the notice of appeal is not effective until the Court decides the pending motion for reconsideration, during which time this Court retains jurisdiction. See also Slep-Tone Ent. Corp. v. Karaoke Kandy Store, Inc., 782 F.3d 712, 716 (6th Cir. 2015).

[2] Because oral argument will not aid the Court's decisional process, the issues will be decided based on the parties' briefing. See E.D. Mich. LR 7.1(f)(2); Fed. R. Civ. P. 78(b). In addition to

Carter filed this prisoner civil rights suit on June 24, 2021, alleging both a First Amendment retaliation claim and a malicious prosecution claim under Michigan law. See Dkt. 1. It was referred to Magistrate Judge Curtis Ivy, Jr. for all pretrial matters. See Dkt. 11. Defendants Sebastian Freeman and Darnell Mandy filed a motion for summary judgment. Magistrate Judge Ivy issued an R&R on March 13, 2023, recommending that the Court (i) grant Defendants' motion for summary judgment as to the First Amendment retaliation claim against them, and (ii) dismiss without prejudice Carter's state-law claim.

On April 4, 2023, 22 days after the magistrate judge issued the R&R and with no objections filed, the Court issued an opinion and order (i) adopting the R&R, (ii) granting Defendants' motion for summary judgment with respect to the First Amendment retaliation claim, and (iii) dismissing Carter's state-law claim without prejudice. On the same day, Carter's objections to the R&R were docketed (Dkt. 42). On April 17, 2023, Carter filed a motion for reconsideration arguing that (i) his objections were timely, (ii) his objections should be considered, and (iii) the Court should reverse its decision and reject the recommendations contained in the R&R based on his objections. On May 16, 2023, he filed a notice of appeal.

Because Carter's objections were timely filed, the Court evaluates the merits of those objections de novo in deciding whether to vacate or let stand its prior ruling adopting the R&R. Because the Court concludes that some of Carter's objections have merit and the magistrate judge's recommendation was incorrect in part, it (i) grants Carter's motion for reconsideration, (ii) vacates its prior ruling, (iii) adopts in part and rejects in part the R&R, (iv) grants Defendants' motion for summary judgment with respect to the First Amendment claim against Mandy, and (v)

---

Carter's motion, the briefing includes his supplemental brief (Dkt. 45) and Defendants' response (Dkt. 50).

denies Defendants' motion for summary judgment with respect to the First Amendment claim against Freeman.

## I. BACKGROUND

The full factual background is set forth in the magistrate judge's R&R. See R&R at 2–4. The events leading to Carter's claims began on December 13, 2017 when, according to the complaint, Freeman "arbitrarily confiscated [Carter's] legal footlocker after he removed legal documents from the locker, and replaced the documents with contraband, for the sole purpose to confiscate Plaintiff's property." Id. at 2 (citing Compl. at PageID.3 (Dkt. 1)). According to Michigan Department of Corrections (MDOC) records attached to Defendants' motion for summary judgment, on that date Carter had received a misconduct ticket for possessing alcohol. Id. (citing Def. Mot. for Summ. J. at PageID.255 (Dkt. 31-2)). Carter alleges that he filed a grievance against Freeman in December 2017, and that it was resolved in his favor and his property was returned. Id. at 2–3 (citing Compl. at PageID.3).

On February 25, 2018, Freeman issued Carter a misconduct ticket for fighting with non-party Douglas Austin. Id. at 3 (citing Def. Mot. for Summ. J. at PageID.229 (Dkt. 31)). Austin also received a misconduct ticket. Id. Carter alleges that this misconduct ticket was fabricated in retaliation for the grievance he filed against Freeman in December 2017, arguing that the encounter with Austin should be characterized as an "assault" as opposed to a "fight."[3] Id. (citing Compl. at PageID.3–5). In support for his theory, Carter alleges that after the altercation, Defendant Freeman said that he "should put [Carter] in segregation" and that Freeman said, "I can do anything

---

[3] "Assault" is defined as the "[i]ntentional, non-consensual touching of another person done either in anger or with the purpose of abusing or injuring another; physical resistance or physical interference with an employee." MDOC Policies, Def. Mot. for Summ. J. at PageID.287 (Dkt. 31-6). "Fighting" is defined as the "[p]hysical confrontation between two or more persons, including a swing and miss, done in anger or with intent to injure." Id.

3

I want, all I have to do is say you were fighting." Id. (citing Compl. at PageID.3–4). Carter alleges that when he asked Freeman why he would do that, Freeman replied: "Why would you file bogus grievances?" Id. (citing Compl. at PageID.4). Freeman contends that he observed a "physical altercation where punches were thrown, consistent with 'fighting,'" and denies ever asking Carter why he would file "bogus grievances." See Freeman Aff. at PageID.267–268 (Dkt. 31-5).

Carter claims that Mandy then forced him to choose between making a statement to support Austin's assault charge or receiving an assault charge himself. Id. at 4 (citing Compl. at PageID.4). Carter alleges that when he declined to "snitch," Mandy placed him in segregation. Id. (citing Compl. at PageID.4). He also alleges that when Mandy reviewed the misconduct ticket, Mandy "wrote a false statement that [Carter] was fighting in attempt to bolster Freeman's false fighting charge." Id. (citing Pl. Resp. to Mot. for Summ. J. (Dkt. 35)).

Defendants argue that Mandy has no personal involvement with the misconduct, and that he simply "review[ed] the misconduct ticket with Carter after the ticket had already been issued by Freeman" in accordance with the MDOC prisoner discipline policy. See Def. Mot. for Summ. J. at PageID.233. They also submit that Mandy placed Carter in segregation because, under MDOC policy, a misconduct ticket for fighting "requires classification to segregation pending a hearing on the misconduct." Id. at 4 (citing Def. Mot. for Summ. J. at PageID.230 (citing MDOC Policy Directive 03.03.105)).

On March 6, 2018, the hearing officer at the misconduct hearing dismissed the fighting charge against Carter. See Misconduct Hr'g Report, Pl. Resp. to Mot. for Summ. J. at PageID.392. The hearing report states:

> The misconduct report is detailed, is supported by prisoner admission in part, it makes sense and is found credible and convincing. I find prisoners [sic] Austin walked up to prisoner Carter's cell. On video its [sic] plain to see Austin is upset as he is yelling and his gestures show this. The door is opened and Austin can be

4

>seen reaching into the cell with a swinging motion. Carter is discovered with a bloody lip. The body of the report describes an assault and does not support a finding Carter engaged in the altercation. For those reasons the [fighting charges against Carter] are dismissed.

Id.

The magistrate judge recommended that the Court grant Defendants' motion for summary judgment on the First Amendment claim against Mandy because he found that Carter has not demonstrated that Mandy had sufficient personal involvement in the alleged retaliation. See R&R at 7–9; R&R at 9 ("Simply put, [Carter] fails to state or bring forth any facts which support that [Mandy] was acting with retaliatory motive."). The magistrate judge also rejected Carter's argument that Mandy is liable under the "cat's paw" theory of liability, which allows a plaintiff—under certain circumstances—to link one party's motive to another party's actions. He explained that he had found no case in the Sixth Circuit applying cat's paw liability where the plaintiff raised only a First Amendment retaliation claim and declined to extend the doctrine. R&R at 9–10.

The magistrate judge recommended that the Court grant Defendants' motion for summary judgment on the First Amendment claim against Freeman because Carter "[could not] establish causation between the grievance [Carter] wrote against [Freeman] and the misconduct ticket for fighting." R&R at 10. While acknowledging a question of fact regarding whether Freeman did ask Carter about his "bogus grievance," the magistrate judge found that "Defendants [had] presented evidence of a valid, nonretaliatory basis for issuing the misconduct ticket which should entitle them to summary judgment." Id. at 12. In the magistrate judge's view, because "[t]here is no dispute that there was a physical altercation between Plaintiff and Austin," and because "there is no dispute that MDOC policy requires a misconduct ticket be written if a corrections officer observes fighting . . . . a reasonable jury could only conclude that Freeman wrote the ticket because he observed [Carter] engage in behavior that constitutes fighting, whether or not [Carter] wrote a

5

grievance against Freeman." Id. at 13. The magistrate judge further recommended that, if the Court were to adopt the recommendation to grant summary judgment for the defendants on the First Amendment claims, the Court should dismiss Carter's state-law malicious prosecution claims without prejudice.

## II. ANALYSIS

The Court first discusses the timeliness of Carter's objections and then turns to their merits.

### A. Timeliness

Parties may serve and file objections to a magistrate judge's R&R within 14 days of service. Fed. R. Civ. P. 72(b)(2). The failure to file a timely objection to an R&R constitutes a waiver of the right to further judicial review. See Thomas v. Arn,, 474 U.S. 140, 150 (1985) ("It does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a de novo or any other standard, when neither party objects to those findings."). When a party must act within a specific period of time after being served and service is made by mail, three days are added after the period would otherwise expire. Fed. R. Civ. P. 6(d). Further, documents filed in federal court by prisoners are deemed filed when submitted to prison officials for mailing. Houston v. Lack, 487 U.S. 266, 270–276 (1988).

The certificate of service on the docket shows that service of the R&R was mailed to Carter on March 13, 2023. Rule 6(d) adds three days to the 14-day deadline for Carter's objections set by Rule 72(b)(2), making his deadline to submit his objections to prison officials for mailing March 30, 2023. Carter's objections were received by the prison mailroom on March 30, 2023. Prisoner Mail Form, Mot. for Recons. at PageID.514–516.

6

Therefore, his objections were timely, and the Court will consider the merits of Carter's objections.

### B. Merits

The Court reviews de novo any portion of the R&R to which a specific objection has been made. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); Alspaugh v. McConnell, 643 F.3d 162, 166 (6th Cir. 2011) ("Only those specific objections to the magistrate's report made to the district court will be preserved for appellate review; making some objections but failing to raise others will not preserve all the objections a party may have.") (punctuation modified). An objection that does nothing more than disagree with a magistrate judge's determination, "without explaining the source of the error," is not considered a valid objection. Howard v. Sec'y of Health and Human Servs., 932 F.2d 505, 509 (6th Cir. 1991); see also Miller v. Currie, 50 F.3d 373, 380 (6th Cir. 1995) (explaining that objections that "disputed the correctness of the magistrate's recommendation but failed to specify the findings that [the objector] believed were in error" were summary in nature and, therefore, invalid). Here, Carter raises nine objections to the R&R. His objections to the magistrate judge's recommendation that summary judgment be granted in favor of Freeman have merit; his objections to the magistrate judge's recommendation that summary judgment be granted to Mandy do not.

7

1. **Defendant Freeman**

Carter argues that the magistrate judge erred in dismissing his First Amendment retaliation claim against Freeman. Carter's primary objection is that the magistrate judge erred when failing to characterize Carter's encounter with Austin as an assault. The magistrate judge declined to explicitly categorize the encounter, instead stating that "[t]he Court need not determine which name is most appropriate: the parties have sufficiently established that a dispute resulting in bodily harm occurred." See R&R at 13–14. Carter explains the significance of the encounter's characterization: whether it was classified as a fight or assault determined the punishment inflicted on the prisoners. Mot. for Recons. at PageID.526. Classification as a fight required both Carter and Austin to be placed in segregation, while classification as an assault would have required only Austin be placed in segregation, with Carter remaining in the general population. Id. Carter argues that the hearing officer's finding during the misconduct hearing that "the body of the report described an assault and does not support a finding Carter engaged in the altercation" is preclusive. Id. at PageID.521–523 (citing Misconduct Hr'g Report, Pl. Resp. to Mot. for Summ. J. at PageID.392). Alternatively, he argues that he has presented sufficient evidence to create a factual dispute. Id. at PageID.523–527.

The Court agrees with Carter that the characterization of the encounter is important. To succeed on his First Amendment retaliation claim, Carter must show that (i) he engaged in protected conduct; (ii) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and (iii) there is a causal connection between elements one and two. See Thaddeus-X v. Blatter, 175 F.3d 378, 394 (6th Cir. 1999). "Under the third element, the subjective motivation of the defendants is at issue." Maben v. Thelen, 887 F.3d 252, 262 (6th Cir. 2018) (punctuation modified). If Austin and Carter were in

8

fact engaged in a fight, then Freeman reported the encounter correctly and Carter has failed to demonstrate the third element of his claim. If, on the other hand, Austin assaulted Carter, then the question of Freeman's "subjective motivation" behind writing a misconduct ticket for fighting would remain open.

As an initial matter, the Court rejects Carter's argument that the hearing officer's factual findings regarding the altercation are entitled to preclusive effect. In support of his argument in favor of preclusion, Carter cites Peterson v. Johnson, in which the Sixth Circuit found a hearing officer's factual finding from a misconduct hearing in a Michigan prion to be preclusive in a later prisoner civil rights suit brought by the prisoner against one of his unit officers. See Mot. for Recons. at PageID.521–522 (citing Peterson v. Johnson, 714 F.3d 905 (6th Cir. 2013)). In Roberson v. Torres, however, the Sixth Circuit clarified that Peterson should not be understood to be a "blanket blessing on every factual finding in a major-misconduct hearing." 770 F.3d 398, 404 (6th Cir. 2014). The question of preclusion, the Court explained, "turns on case-specific factual questions" such as "whether the party to be precluded had sufficient incentives to litigate those issues and a full and fair opportunity to do so—not just in theory, but in practice." Id. And while many factors may come into play, preclusion ultimately "turns on the court's sense of justice and equity." Id. at 405 (punctuation modified).

In this case, Freeman did not have "sufficient incentives" to litigate or contest the officer's factual findings at the misconduct hearing. In Peterson, by contrast, the Sixth Circuit found that Peterson had incentive to "vigorously contest" the defendant's account "not least because losing the argument could mean, and did mean, thirty days of detention." 714 F.3d at 915. Freeman's incentives to vigorously contest factual findings are very different from what they were for Peterson—or what they would be for Carter or another prisoner-plaintiff—as the hearing was not

9

directed against Freeman personally and he faced no potential punishment, monetary liability, or other legal detriment from a finding in favor of a prisoner. See Thomas v. Thomas, No. 11-12193, 2016 WL 5799342, at *3 (E.D. Mich. Oct. 5, 2016) ("[The prison employee's] incentive to vigorously contest the factual findings are relevant and clearly distinguishable from a prisoner's incentive—[the prison employee] did not personally risk detention or any other severe sanction as a result of the ALJ's factual findings in the misconduct hearing."). The Court finds that it would not be just or equitable to hold the findings of fact against Freeman here.

Though wrong about preclusion, Carter is correct in arguing that he has submitted sufficient evidence to establish a question of fact as to whether Freeman falsely classified the encounter as a fight to unlawfully retaliate against Carter for submitting the grievance against him in December 2017. Carter provided an affidavit from Austin in which Austin stated that unit officers, including Freeman, told him that Carter was a "snitch," "motivat[ing] [Austin] to start a fight with Carter" in which "Carter did not fight back." Austin Aff., Pl. Resp. to Mot. for Summ. J. at PageID.381–382. According to the Austin affidavit, the unit officers opened the door to Carter's cell for Austin and then closed his door again "once they saw [Carter] did not fight back."[4] Id. at PageID.382.

Freeman provides conflicting evidence. He submitted an affidavit to accompany Defendants' motion for summary judgment in which he states: "I observed Carter and Austin in a physical altercation where punches were thrown, consistent with 'fighting,' and Carter had a

---

[4] In addition to the Austin affidavit, Carter presents his own version of events in his response to Defendants' motion for summary judgment, citing his complaint, which alleges that Freeman told Carter that "all [he] ha[d] to do [was] say [Carter was] fighting" and asked Carter why he would file "bogus grievances." Pl. Resp. to Mot. For Summ. J. at PageID.368. Carter's unsworn statements do not comply with the requirements of Fed. R. Civ. P 56(c) and may not be considered as evidence. Because the misconduct report issued by the hearing officer had no preclusive effect, the report itself is not evidence that may be considered on summary judgment.

swollen lip and blood in his mouth." Freeman Aff. at PageID.267 (Dkt. 31-5). Freeman also states that "[a]t no time, on February 25, 2018, or otherwise, did [he] ask Carter, 'why would you file bogus grievances?'" Id. at PageID.268. This conflicting evidence highlights that there is a factual dispute about whether Freeman's characterization of the altercation as fighting was accurate.

The magistrate judge recognized that there was a factual dispute. R&R at 12. But he then reasoned that Freeman's "present[ation] [of] evidence of a valid, nonretaliatory basis for issuing misconduct ticket . . . should entitle [him] to summary judgment." See R&R at 12. This was an error because a defendant's mere assertion of a nonretaliatory motive is not an escape-hatch from a trial on a First Amendment retaliation claim. Rather, a court "views the evidence, all facts, and any inferences that may be drawn from the facts" and does so "in the light most favorable to the nonmoving party." Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co., 95 F. App'x 132, 135 (6th Cir. 2004). Given the above conflicting evidence, there is a question of fact about whether Freeman was actually animated by a retaliatory motive. Summary judgment in favor of Freeman must be denied.[5]

**2. Defendant Mandy**

Carter also argues that the magistrate judge erred in dismissing his First Amendment retaliation claim against Mandy. He argues that the magistrate judge erroneously accepted Defendants' arguments and rejected Carter's allegations in stating that Carter "acknowledges that [he] cannot show that [Mandy] was personally involved in issuing the misconduct ticket, and cannot show Mandy was aware of any grievance against Freeman." See Mot. for Recons. at PageID.528 (citing R&R at 9). While it may be true that Carter does not acknowledge that Mandy

---

[5] Carter notes that Freeman has failed to provide video of the encounter, arguing that this failure should weigh in his favor. See Mot. for Recons. at PageID.526. The Court need not consider this issue, at this point, given that other evidence creates a material issue of fact.

was not personally involved or aware, it is also true that Carter has provided no evidence to show either personal involvement or awareness. And as the magistrate judge explained in the R&R, to successfully assert a retaliation claim against a specific defendant, a plaintiff must demonstrate personal involvement. R&R at 8 (citing Robertson v. Lucas, 753 F.3d 606, 615 (6th Cir. 2014)). Carter does not even allege that Mandy was aware of the grievance that forms the basis for the retaliation claim, asserting that "Mandy wrote a false statement that [Carter] was fighting in an attempt to bolster Freeman's false fighting charge" without any supporting evidence. Pl. Resp. to Mot. for Summ. J. at PageID.374.

In both his response to the Defendants' motion for summary judgment and in his objections to the R&R, Carter relies solely on the "cat's paw" theory of liability to implicate Mandy. See Resp. to Mot. for Summ. J. at PageID.374; Mot. for Recons. at PageID.527–528. The cat's paw theory of liability allows a court to "impute[] knowledge and discriminatory intent" from a person with a retaliatory motive to a decisionmaker, Bose v. Bea, 947 F.3d 983, 990 (6th Cir. 2020).

Carter's cat's paw argument was rejected by Magistrate Judge Ivy in his R&R: "[T]he Court has found no case in the Sixth Circuit applying cat's paw liability where the sole claim is a First Amendment retaliation claim and this Court shall not extend the doctrine." R&R at 10. The cat's paw theory of liability has been held to apply in the case of an agency or respondeat superior relationship and is intended for situations in which subordinates intend to cause discriminatory action but the actual action is carried out by a superior with no knowledge of the subordinates' intention. See Bose, 947 F.3d at 990–991 ("Indeed, we have referred to cat's paw as an application of 'agency principles,' and have even called it the 'rubber-stamp-theory.'") (citations omitted). Carter has not alleged any such relationship, or provided any cases where a court applied the theory of liability to a similar fact pattern; nor is the Court aware of any.

Even if the cat's paw theory could be applied to a First Amendment retaliation claim, it could not be utilized against Mandy on these facts. The cat's paw theory allows a plaintiff to hold a retaliating party liable, even when that party is "not charged with making the ultimate . . . decision." See Shazor v. Pro. Transit Mgmt., Ltd., 744 F.3d 948, 955 (6th Cir. 2014). Here, Mandy is the party charged with making the ultimate decision, and Freeman the party with the alleged retaliatory motive. Therefore, Carter's use of the cat's paw theory could be used only to implicate Freeman, not Mandy.

Because there is no personal involvement shown for Mandy, summary judgment will be awarded to him.

**3. State Law Claim**

The magistrate judge recommended that, if the Court grants summary judgment as to all Defendants, the Court should dismiss without prejudice Carter's claims of malicious prosecution under Michigan state law. See R&R at 14. "When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims[.]" Id. (citing Musson Theatrical, Inc. v. Express Corp., 89 F.3d 1244, 1254–1255 (6th Cir. 1996)).

The Court has rejected the recommendation to grant summary judgment as to Freeman on the federal claim. Because Freeman did not argue any basis for dismissal of the state law claims in the event the federal claim remains, the Court will not dismiss the state law claim. However, as to Mandy, dismissal of the federal claim means the state law claim should be dismissed without prejudice.

## III.  CONCLUSION

For the reasons stated above, the Court (i) grants Carter's motion for reconsideration (Dkt. 44), (ii) vacates its prior summary judgment ruling (Dkt. 39), (iii) adopts in part and rejects in part the R&R (Dkt. 38), (iv) grants Defendants' motion for summary judgment (Dkt. 31) with respect to the First Amendment claim against Mandy, and (v) denies Defendants' motion for summary judgment (Dkt. 31) with respect to the First Amendment claim against Freeman.  The Court accordingly reopens this case.

SO ORDERED.

Dated: December 28, 2023　　　　　　s/Mark A. Goldsmith
Detroit, Michigan　　　　　　　　　　MARK A. GOLDSMITH
　　　　　　　　　　　　　　　　　　United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on December 28, 2023.

　　　　　　　　　　　　　　　　　　s/J. McCoy
　　　　　　　　　　　　　　　　　　Case Manager